IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

KHAYDARJON TULKIN UGLI KHASANOV,

    Petitioner,

v.                                                                          No. 1:26-cv-00452-MLG-JMR

WARDEN, Torrence County Detention Center;
MARY DE ANDA-YBARRA, Field Officer
Director of Enforcement and Removal
Operations, El Paso Field Office, Immigration
and Customs Enforcement; TODD M. LYONS,
Senior Official Performing the Duties of the
Director of Immigration and Customs
Enforcement; KRISTI NOEM, Secretary, U.S.
Department of Homeland Security; PAMELA
BONDI, U.S. Attorney General,

    Respondents.

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS AND
DIRECTING RESPONDENTS TO RELEASE PETITIONER WITHIN 24 HOURS**

    Petitioner Khaydarjon Tulkin Ugli Khasanov, a citizen of Uzbekistan, is detained at the Torrance County Detention Center in Estancia, New Mexico. Doc. 2 ¶¶ 1, 34. Khasanov entered the United States on February 11, 2023, and was released on his own recognizance by the Department of Homeland Security ("DHS") on February 13, 2023. *Id.* ¶¶ 3-5; *see also* Doc. 2-2. Prior to being taken into custody by Immigration and Customs Enforcement ("ICE") officers on January 10, 2026,[1] Khasanov was residing in New York and working as a truck driver. *Id.* ¶¶ 5-6, 42-45. Khasanov challenges his continued detention and seeks a writ of habeas corpus under 28 U.S.C. § 2241 directing federal immigration authorities to immediately release him from custody,

---

[1] The Petition alternatively states that Khasanov was detained on January 10, 2025, *see* Doc. 2 ¶ 6, but this appears to be a typo.

1

or, in the alternative, to conduct a bond hearing pursuant to 8 U.S.C. § 1226(a) within three days. Doc. 2 at 13-14. He also requests an award of attorney's fees and costs pursuant to the Equal Access to Justice Act ("EAJA") and the issuance of an order that Khasanov may not be re-detained "absent compliance with constitutional protections . . . ." *Id.*

Federal Respondents responded to Khasanov's Emergency Petition for Writ of Habeas Corpus ("Petition"), Doc. 2, on March 2, 2026. *See* Doc. 6. They assert that Khasanov is "correctly classified as an 'applicant for admission' under Section 1225(b)(2)(A) based on the plain language of that statute." Doc. 6 at 2. In advancing this argument, federal Respondents cite the United States Court of Appeals for the Fifth Circuit's recent decision in *Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026). Doc. 6 at 2. This is not binding authority, and, respectfully, the Court does not find the majority opinion persuasive.

Whether Khasanov's detention is governed by 8 U.S.C. § 1226(a), or whether he is instead subject to the mandatory detention provision provided by 8 U.S.C. § 1225(b)(2)(A),[2] is a question the Court has already addressed in regard to similarly situated petitioners. *See, e.g.*, *Cortez-Gonzales v. Noem*, No. 2:25-cv-00985, 2025 WL 3485771, at *3-5 (D.N.M. Dec. 4, 2025); *Diaz-Cruz v. Dedos*, No. 1:25-cv-01117, 2025 WL 3628517, at *2 (D.N.M. Dec. 12, 2025); *Gonzales Ramos v. Dedos*, No. 1:25-cv-00975, 2025 WL 3653928, at *2-5 (D.N.M. Dec. 17, 2025). In doing so, the Court joins the "vast majority" of courts that have concluded that § 1226(a)—not

---

[2] *Compare* § 1226(a)(2) ("On a warrant issued by the Attorney General, a[] [noncitizen] may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States . . . and pending such decision, the Attorney General . . . *may* release the [noncitizen] on . . . bond of at least $1,500 . . . ." (emphasis added)), *with* § 1225(b)(2)(A) ("[I]n the case of a[] [noncitizen] who is an applicant for admission, if the examining immigration officer determines that a[] [noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted, the [noncitizen] *shall* be detained for a proceeding under section 1229a . . . ." (emphasis added)).

§ 1225(b)(2)(A)—governs the detention of noncitizens[3] like Khasanov, who was released on his own recognizance by DHS in February 2023 and has been residing in the United States since then. Doc. 2 ¶¶ 2-5; Doc. 2-2; *see, e.g.*, *Bethancourt Soto v. Soto*, No. 25-cv-16200, 2025 WL 2976572, at *7 (D.N.J. Oct. 22, 2025) (emphasis removed) (collecting cases concluding that "§ 1225(b)(2)(A) applies only to noncitizens who are actively, *i.e.*, affirmatively, 'seeking admission' to the United States" and not to noncitizens who have already been residing in the United States); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 485 (S.D.N.Y. 2025) (explaining that releasing a noncitizen on their own recognizance "is not humanitarian or public benefit parole into the United States under §§ 1225 and 1182(d)(5)(A), but rather[,] a form of conditional parole from detention, authorized under § 1226" (citation modified)).

The Court's conclusion that Khasanov's detention is similarly governed by § 1226[4] is bolstered by DHS's issuance of an "Order of Release on Recognizance" pursuant to § 1226.[5] *See* Doc. 2-2 at 2 (demonstrating that Khasanov was released on his own recognizance "in accordance with section 236 of the Immigration and Nationality Act" which is codified at § 1226); *Gomes v. Hyde*, 804 F. Supp. 3d 265, 269 (D. Mass. 2025) ("[T]he government may release a noncitizen detained under Section 1226(a) on an Order of Recognizance, which is a form of conditional parole"); *see also Ramirez-Gavilan v. Collins*, No. 1:25-CV-2052-RP, 2026 WL 274705, at *5

---

[3] This order "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020); *see generally* 8 U.S.C. § 1101(a)(3) ("The term 'alien' means any person not a citizen or national of the United States.").

[4] Federal Respondents agree the Court's previous rulings control the outcome of this case because "the facts are not materially distinguishable for purposes of the Court's decision on the legal issue of which statutory provision authorizes Petitioner's detention." *See* Doc. 6 at 2.

[5] Respondents offer no evidence or argument that Khasanov was released pursuant to different statutory authority. *See generally* Doc. 6.

(W.D. Tex. Jan. 17, 2026) ("[T]he government has already treated Petitioner as subject to § 1226 when they paroled him under that provision—a form of parole that would not have been possible if he was being detained subject to § 1225. That alone would be sufficient to say that Petitioner is wrongfully detained under § 1225 now.").

Khasanov argues that because he was "re-detained without the formal revocation of his conditional parole and was not provided with any notice or opportunity to contest his re-detention," his due process rights under the Fifth Amendment have been violated, warranting his immediate release. Doc. 2 ¶¶ 14-15. As Khasanov points out, DHS's decision to release him on his own recognizance necessarily involved a factual determination that he was neither a flight risk nor a danger to the community. *See* Doc. 2 at 7 ¶ 38; *see also* 8 C.F.R. § 1236.1(c)(8) (explaining that a noncitizen may be released if they "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding"). But prior to his re-detention, "[n]either Respondent nor anyone at DHS, ICE, DOJ or EOIR ever made any individualized determination that Mr. Khasanov poses a flight or public safety risk. . . or as to the changed circumstances justifying any potential revocation of his previous parole pursuant to § 1226(a)." Doc. 2 ¶ 54. Federal Respondents do not dispute this, nor do they contest Khasanov's assertion that his parole was never formally revoked. Doc. 2 ¶ 9; *see generally* Doc. 6.

Noncitizens released from immigration custody have a liberty interest in remaining free. *See, e.g.*, *Pablo Sequen v. Albarran*, 806 F. Supp. 3d 1069, 1082 (N.D. Cal. 2025) ("Even when the government has discretion to detain an individual, its subsequent decision to release the individual creates 'an implicit promise' that [they] will be re-detained only if [they] violate[] the conditions of [their] release." (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)), *appeal*

4

*filed sub nom.*, *Garcia v. Albarran*, No. 25-7868 (9th Cir. Dec. 16, 2025). The Court recently addressed what process is "necessary to ensure any deprivations of that protected liberty interest accords with the Constitution." *Diallo v. Orozco*, No. 2:26-cv-00066-MLG-JHR, 2026 WL 608746, at *3 (D.N.M. Mar. 4, 2026) (internal quotation marks omitted) (quoting *Garcia Domingo v. Castro*, 806 F. Supp. 3d 1246, 1252 (D.N.M. 2025)). The *Mathews v. Eldridge*[6] balancing test guides this analysis. *See Diallo*, 2026 WL 608746, at *3-4. As in *Diallo*, the Court concludes that due process demands that Khasanov receive a pre-deprivation hearing because (1) Khasanov has a clear liberty interest in remaining out of custody; (2) the risk of erroneous deprivation under the procedures used here is high, and the probable value of additional procedural safeguards is considerable, given that Khasanov was re-detained despite Respondents' failure to provide any valid legal basis to justify his civil detention; and (3) Respondents' interest in detaining Khasanov is low because they have already determined that he is neither a flight risk nor a danger to the community, and the cost of a pre-deprivation hearing is minimal. *See id.*; *see also Pablo Sequen*, 806 F. Supp. 3d at 1082-90.

Because Khasanov did not receive a pre-deprivation hearing, *see* Doc. 2 ¶¶ 46-47, his detention is an ongoing violation of his right to due process. *See Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings."); *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[O]nce [a] [noncitizen] enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."). The Petition is therefore granted, and Khasanov shall

---

[6] 424 U.S. 319, 335 (1976).

be immediately released. *See, e.g.*, *Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("The typical remedy for [unlawful executive] detention is, of course, release.").

Additionally, the Court will consider Khasanov's request for attorney's fees and costs under the EAJA. *See* Doc. 2 at 14; *Delay v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025) ("[W]e read the EAJA's broad language to unambiguously authorize fees in habeas actions challenging immigration detention."). "Under [the] EAJA, a fee award is required if: (1) plaintiff is a 'prevailing party'; (2) the position of the United States was not 'substantially justified'; and (3) there are no special circumstances that make an award of fees unjust." *Hackett v. Barnhart*, 475 F.3d 1166, 1172 (10th Cir. 2007) (quoting 28 U.S.C. § 2412(d)(1)(A)). Khasanov must "within thirty days of final judgment in the action, submit to the court an application for fees and other expenses," and demonstrate that "the position of the United States was not substantially justified."[7] § 2412(d)(1)(B). Respondents must then justify their position. *See Hackett*, 475 F.3d at 1170.

It is hereby ordered:

1. Respondents must release Khasanov from custody, subject to the conditions of his parole, within twenty-four hours of this Order's filing.

2. Upon Khasanov's release, Respondents must return all of his property, including any identification documentation, that was in his possession when he was detained.

3. Respondents must file a status report within three days of this Order's filing to certify their compliance. The status report shall state when and where Khasanov was released.

4. Respondents may not re-detain Khasanov without conducting a pre-deprivation hearing before a neutral immigration judge during which Respondents must show

---

[7] The Court intends to enter a final judgment following receipt of Respondents' status report.

    by clear and convincing evidence that Khasanov is a flight risk or a danger to the community, and that no conditions other than his detention would be sufficient to alleviate such concerns.[8] Respondents must notify Khasanov seven days in advance of any such hearing.

5. Petitioner shall promptly report to the Court any failure to comply with this Order by Respondents.

It is so ordered.

                                                          UNITED STATES DISTRICT JUDGE
                                                          MATTHEW L. GARCIA

---

[8] *See Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1240-46 (D.N.M. 2025) (concluding that, where the petitioner had "been unlawfully detained without due process in violation of his constitutional rights[,]" the appropriate remedy was "shifting the burden to the Government to prove, by clear and convincing evidence, that [the p]etitioner is at risk of flight and/or a danger to the community such that continued detention is necessary").